IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: TEAM SYSTEMS INTERNATIONAL, LLC,       :    Chapter 7

        Debtor.                                :    Bankr. Case No. 22-10066 (CTG)

_____           :
                                              :    Adv. Proc. No. 23-50004 (CTG)
DEBORAH EVANS MOTT, STEVEN M. ACOSTA,          :
CHRISTOPHER MOTT, JOHN S. MACIOROWSKI,         :
ADDY ROAD LLC, and TEAM SYSTEMS                :
INTERNATIONAL SOUTHEAST LLC,                   :
                                              :
        Appellants,                            :
            v.                                 :
                                              :    Civ. No. 24-1094-GBW
GEORGE L. MILLER, solely in his capacity as the :   Civ. No. 24-1098-GBW
Chapter 7 Trustee of the estate of TEAM SYSTEMS :
INTERNATIONAL, LLC,                            :
                                              :
        Appellees.                             :

_____

**MEMORANDUM**

The above-captioned interlocutory appeals arise in an adversary proceeding [1] (the "Adversary Proceeding") brought by George L. Miller (the "Trustee"), in his capacity as the chapter 7 trustee appointed in the bankruptcy case of Team Systems International, LLC ("TSI" or the "Debtor"), against, among others, defendants Deborah Evans Mott ("Mott"), Steven M. Acosta ("Acosta"), Christopher Mott, John S. Maciorowski, Addy Road LLC, and Teams Systems International Southeast LLC (together, the "Defendants"), in which the Trustee seeks to recover millions of dollars of actual and constructive fraudulent conveyances that the Debtor allegedly made to a number of insiders, including Mott, prior to the bankruptcy filing.

Defendants' first interlocutory appeal concerns the Bankruptcy Court's August 13, 2024 Order (Adv. D.I. 296) (the "Stay Order") which granted in part and denied in part Defendants'

_____

[1] The docket of the Adversary Proceeding is cited herein as "Adv. D.I. __."

motion to stay the entire Adversary Proceeding as to all Defendants pending the outcome of a criminal proceeding against Mott, together with the Bankruptcy Court's September 30, 2024 Order denying Defendants' motion for reconsideration of the Stay Order. (*See* Civ. No. 24-1094-GBW, D.I. 1 (the "Stay Appeal").)   Defendants' second interlocutory appeal concerns the Bankruptcy Court's September 25, 2024 Order ("Subpoena Order") which denied Defendants' motion to quash subpoenas directed toward individual personal bank accounts. (*See* Civ. No. 24-1098-GBW, D.I. 1 (the "Subpoena Appeal").)  Neither of the interlocutory appeals was filed with a motion for leave to appeal an interlocutory order as required by Federal Rule of Bankruptcy Procedure 8004(d).

Pending before the Court is the Trustee's motion, filed in both the Stay Appeal and the Subpoena Appeal, seeking dismissal of both appeals for lack of jurisdiction on the basis that the appeals are interlocutory, or, alternatively, denial of leave to appeal. (*See* Civ. No. 24-1094-GBW, D.I. 6 and Civ. No. 24-1098-GBW, D.I. 7 (together, the "Motion to Dismiss").)  For the reasons set forth below, the Motion to Dismiss the Stay Appeal and the Subpoena Appeal will be granted.

## I.    BACKGROUND

### A.    The Debtor and the Adversary Proceeding

It appears undisputed that, prior to the bankruptcy, TSI, a limited liability company organized under the laws of the State of Delaware, served the United States government as a prime contractor and subcontractor for various agencies and projects, and that TSI provided logistical support, including the procurement, transport, and delivery of goods and services.  Relevant here, it also appears undisputed that TSI entered into certain agreements with the Department of Homeland Security, Federal Emergency Management Agency ("FEMA") to supply and deliver bottled water to designated locations in the event of natural disasters.  The First Amended Complaint (Adv. D.I. 37) ("Amended Complaint") alleges that TSI was managed by its Management Committee, also

referred to as Managers, who at all relevant times were Deborah Evans Mott ("Mott") and Steven M. Acosta ("Acosta"). (Amended Complaint ¶ 29.)

On January 18, 2022, TSI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. By March 31, 2022, the Bankruptcy Court entered an order converting the Debtor's case to a case under chapter 7 and directing the appointment of the Trustee.

On January 10, 2023, the Trustee commenced the Adversary Proceeding against all of the Defendants seeking to avoid and recover certain alleged fraudulent transfers and other related relief. The Amended Complaint alleges that Mott and Acosta perpetrated "a scheme to hinder, delay, and defraud the Debtor's Estate and its creditors while systematically looting the Debtor's assets." (*Id.* ¶ 1.) According to the Amended Complaint:

> TSI bid for and obtained a lucrative government contract .... Weeks later, Hurricane Maria devastated Puerto Rico. FEMA paid TSI more than $37 million to procure bottled water for hurricane victims. TSI could have paid all of its creditors in full and still would have had millions of dollars for equity holders. Instead, Mott and Acosta decided to keep the money for themselves and embarked on a campaign of fraud and deceit.

(*Id.* ¶ 2.) The Amended Complaint further alleges that:

> During the four-year period prior to the Petition Date, Mott and Acosta caused the Debtor to transfer millions of dollars to themselves and to the other Defendants, who are either close family members of Mott or are entities owned or controlled by Mott, Acosta, or the other Defendants (collectively, as set forth on **Exhibit A**, the "Fraudulent Transfers").

The Amended Complaint further alleges that "Mott and/or Acosta failed to disclose, or actively concealed, large transfers of the Debtor's funds and certain Debtor bank accounts." (*Id.* ¶ 5.) The Amended Complaint further alleges that:

> Mott, Acosta, and others have made numerous false statements, intentionally altered documents offered as evidence in at least two legal proceedings, and engaged in other misconduct to further and conceal their fraudulent scheme and looting of the Debtor's assets.

3

> Among other things, Mott made false statements, including under
> oath; Mott and/or Acosta produced falsified or altered documents;
> Mott and/or Acosta authorized the filing of court documents that
> contain false statements; Mott and/or Acosta allowed the Debtor to
> violate multiple court orders; and Mott and/or Acosta engaged in
> other acts of bad faith or intentional misconduct, as set forth in this
> Complaint.

(*Id.* ¶ 6.) Finally, the Amended Complaint alleges that "Mott and Acosta, as the sole Managers and members of the Debtor's Management Committee, repeatedly breached their fiduciary duties owed to the Debtor and its creditors by engaging in blatant self-dealing and failing to comply with the most basic requirements of corporate governance." (*Id.* ¶ 7.)

**B.    The Referral and Indictment**

The Debtor's Statement of Financial Affairs, which Mott signed under penalty of perjury, failed to disclose certain transfers identified in the Amended Complaint. As the Bankruptcy Court explained in its January 31, 2023 Memorandum Opinion granting the Trustee's motion for a preliminary injunction, the Debtor had in fact transferred several million dollars to insiders, including Mott, as set forth in the Debtor's bank statements which were eventually obtained by the Trustee. *See In re Team Systems Int'l*, 2023 WL 1428572, *5-*6 (Bankr. D. Del. Jan. 31, 2023) (the "January 31, 2023 Opinion.")

Section 3057(a) of Title 18 of the United States Code provides that any "judge … having reasonable grounds for believing that any violation … [of any] laws of the United States relating to insolvent debtors … has been committed … ***shall*** report to the appropriate United States attorney all the facts and circumstances of the case…" 18 U.S.C. § 3057(a) (emphasis added). The Bankruptcy Court concluded that the circumstances described in its January 31, 2023 Opinion required the Bankruptcy Court to report the matter to the United States Attorney, and it did so in a February 2, 2023 letter to the United States Attorney (Adv. D.I. 292-1) (the "Referral").

4

On July 11, 2024, a grand jury handed down a two-count indictment charging: (i) false statements by Ms. Mott under penalty of perjury in a bankruptcy case for failing to disclose transfers to insiders and other information on the Debtor's Statement of Financial Affairs, and (ii) false statements by Ms. Mott under oath during a February 7, 2022 deposition regarding, among other things, transfers for the purchase of a Bethany Beach, Delaware beach house. Only Mott signed the Statement of Financial Affairs. Only Mott testified at the February 7, 2022 deposition.

The Bankruptcy Court was apprised of the indictments on July 15, 2024, at the outset of a previously scheduled hearing to resolve a discovery dispute that had otherwise arisen in the Adversary Proceeding. (*See* Adv. D.I. 292 at 2-3.) In light of the indictment, the Bankruptcy Court adjourned that hearing to provide Mott the opportunity to seek a stay of the Adversary Proceeding in light of the pendency of the criminal case. (*Id.* at 3.)

### C.    The Stay Order

Instead, Defendants filed a motion seeking to stay the entire Adversary Proceeding as to all Defendants "pending the outcome of [the] parallel criminal case" against Mott on the basis of their Fifth Amendment rights. (Adv. D.I. 263.) Defendants asserted "[t]here is substantial overlap between the allegations of the criminal indictment and the subject matter of the adversary complaint," which "impose a significant burden on Ms. Mott and the other adversary defendants, as any potential invocation of Fifth Amendment rights in the criminal proceedings would trigger an adverse inference that would undermine their ability to mount a defense against the Trustee's allegations in the adversary proceeding." (*Id.* at 2.)

The Trustee objected on the basis that the remaining Defendants had not been indicted and had not carried their burden to justify a stay of discovery, much less a stay of the entire Adversary Proceeding. (*See* Adv. D.I. 273 at 2-3.) The Trustee asserted that the remaining Defendants' blanket suggestion that there is a "potential" for an invocation of Fifth Amendment rights" in the future is

far from sufficient to raise an actual Fifth Amendment concern. (*See id.* at 3) The Trustee further argued that most of the documents sought by the Trustee—the Debtor's business records, bank statements, tax information, and other business records—were not protected by the Fifth Amendment. (*See id.* at 15-17.)

On August 8, 2024, the Bankruptcy Court conducted a hearing on the Defendants' motion for a stay of the entire Adversary Proceeding. (*See* Adv. D.I. 293 ("8/8/2024 Tr.").) The Bankruptcy Court concluded that it would stay the Adversary Proceeding as to Mott pending the outcome of her criminal proceeding but permit the case to proceed against the remaining Defendants, provided, however, that no claim involving the intent of the Debtor would be adjudicated during the pendency of the criminal case. In addition, the Bankruptcy Court's ruling was without prejudice to the right of any party to return to the Bankruptcy Court to seek a stay if particular circumstances demonstrated that the party required Mott's testimony in order fairly to defend against the Trustee's action.

Following that hearing, on August 9, 2024, the Bankruptcy Court issued a letter informing the parties of the Referral. On August 13, 2024, the Bankruptcy Court entered the Stay Order memorializing its ruling.

## D. The Motion for Reconsideration and the Stay Appeal

Defendants sought reconsideration of the Stay Order (Adv. D.I. 307) on the basis that the Referral was new evidence indicating that the remaining Defendants may be facing criminal charges, insomuch as the Referral noted the Bankruptcy Court's conclusion that "there are reasonable grounds to believe that various principals of the debtor [TSI] may have violated one or more of subsections … of 18 U.S.C. § 152." (Referral at 1.) According to Defendants, "[t]he fact that all members of Debtor, all of whom are Defendants in this adversary case, may face criminal indictment greatly prejudices their ability to cooperate in the defense of this adversary case." (Adv. D.I. 307 at 2.) "As each of the Debtor's members obtain separate criminal counsel, the use of the

6

Fifth Amendment, even in discussions among the members, makes proceeding with a civil action difficult and potentially impossible." (*Id.*)

The Trustee opposed the motion for reconsideration on the basis that the purported "new evidence" failed to meet the requirements that it (i) differ "materially from the evidence when the issue was first decided" and (ii) would have altered the Bankruptcy Court's prior ruling. (*See* Adv. D.I. 321 at 3 (quoting *Ampro Computers, Inc. v. LXE, LLC*, 2016 WL 3703129, at *2 (D. Del. July 8, 2016).) The Trustee asserted that Mott's indictment—which the Bankruptcy Court did consider in entering the Stay Order—did not materially differ from the Referral; rather the Referral confirmed that the remaining Defendants' Fifth Amendment concerns are, at best, speculative, and would not have altered the Bankruptcy Court's prior ruling. (*See* Adv. D.I. 321 at 5). The Trustee argued:

> Mott's Indictment concerns acts *personal* to Mott—her *personal* signature on a fraudulent Statement of Financial Affairs and her *personal*, false deposition testimony.... Mott's Indictment triggered a Fifth Amendment concern as to Mott and her *personal* criminal activity. By contrast, Mott's Indictment that the Court already considered refers to the "Individual" recipients of the transfers Mott hid—*i.e.*, Defendants other than Mott—but does not include them as indicted defendants or refer to any acts by any of them that rise to the level of criminal activity.

(*Id.* at ¶¶ 8-9.) The Trustee therefore argued that, notwithstanding the Referral, extending the stay to the non-indicted Defendants who have offered no evidence that they are currently under investigation, much less "subjects" or "targets" of an active, parallel investigation, remained unwarranted. The Trustee argued:

> Consistent with the existing facts, the [Bankruptcy] Court stayed this Adversary Proceeding as to Mott *because she was indicted* and, therefore, a valid Fifth Amendment consideration was triggered. The Court denied a stay regarding the other Defendants who, although being referred to in the Indictment, *have not been indicted* in the 18 months since the [Referral]. The [Bankruptcy] Court nevertheless protected those Defendants from any perceived need for Mott's testimony to defend themselves by limiting any dispositive motion or trial to matters not involving the "intent of the debtor."

(*Id.* at ¶ 10.)

On September 25, 2024, the Bankruptcy Court heard oral argument on the motion for reconsideration. (*See* Adv. D.I. 361 ("9/25/24 Tr.") at 5-30.) The Bankruptcy Court ultimately denied the motion for reconsideration on the basis it presented no new evidence—only legal arguments. The Bankruptcy Court was further satisfied that, notwithstanding the Defendants' arguments, certain discovery, including requests identified by Defendants' counsel, "don't implicate anyone's Fifth Amendment rights, so those should proceed," and "if and when ... someone asserts a Fifth Amendment right, we'll address it." (9/25/24 Tr. at 29:11-25.) As the Bankruptcy Court observed:

> I am highly sensitive, I hope everyone in the room appreciates, to the importance of the criminal process and the rights of those who might face criminal jeopardy. And while I appreciate that there's a balancing test, that I am inclined to strike the balance in favor of being respectful of the rights of the accused, as opposed to insisting that the civil litigation in front of me go forward. But I – to the extent it can go forward without implicating their rights, I – basically, I'll only stop the civil litigation if and when there's a record that shows me that someone's rights are implicated, and I don't think we're there with respect to anyone other than Ms. Mott. So I'm going to deny this motion.

(9/25/24 Tr. at 30:1-13.) On September 30, 2024, the Bankruptcy Court entered its order denying the motion for reconsideration of the Stay Order. (Civ. No. 24-1094-GBW, D.I. 1-2.) On October 1, 2024, Appellants filed the Stay Appeal.

**E.    The Subpoena Order and Subpoena Appeal**

On August 5, 2024, in connection with the stay request, Defendants filed an affidavit in support of an application for a seizure warrant by the Special Agent of the Federal Bureau of Investigation involved in Ms. Mott's criminal case (Adv. D.I. 281-2) (the "Affidavit"). The Affidavit asserted that more than $1.8 million of the Debtor's money had been converted into

cashier's checks that Ms. Mott held (in one instance, for more than two years), and that Ms. Mott then deposited the cashier's checks into an account in the name of Defendant Addy Road LLC, from which Ms. Mott disbursed certain funds to herself, certain other Defendants, and third parties. (*See id.* ¶¶ 48-54.) While Defendants dispute that these transfers were fraudulent or otherwise improper, the Trustee obtained permission from the Bankruptcy Court to subpoena records from two banks regarding the transfers identified in the Affidavit, to aid the tracing of particular amounts. (*See* 8/8/24 Tr. at 70:22-24.)

On August 9, 2024, the Trustee served notice and copies of the third-party subpoenas upon Defendants' counsel and caused services of the subpoenas upon the banks. The deadline to respond to the subpoenas was August 30, 2024. On September 10, 2024, Defendants filed a motion to quash the third-party subpoenas on the basis, *inter alia*, of a prior January 30, 2024 ruling which had preliminarily denied the Trustee the right to subpoena personal bank account records unless the Trustee could establish a basis for concern that funds were being moved improperly. (*See* Adv. D.I. 324 at 2.)

On September 25, 2024, the Bankruptcy Court conducted a hearing on Defendants' motion to quash. (*See* 9/25/24 Tr. at 31-50.) The Bankruptcy Court determined, among other things, that the evidence presented at the August 8, 2024 hearing established a basis for concern that funds were being moved improperly, including evidence suggesting that "as recently as 2023 or 2024, the defendants may have been moving substantial sums of money among accounts" in what "could plausibly be an effort to move funds that were once the property of the estate out of the hands of the defendants, who were the initial transferees, to related and affiliated entities, who would then become subsequent transferees." (*Id.* at 41:2-9.) The Bankruptcy Court further rejected Defendants' argument that personal bank account information was not relevant because "only the initial transfers are relevant to determining fraudulent transactions." (*See* Adv. D.I. 324 at 2.) "If

an initial transferee seeks to hide funds by moving them to a subsequent transferee, discovery aimed at identifying that subsequent transferee and locating the funds at issue would plainly be relevant and appropriate." (9/25/24 Tr. at 42:6-14.)

Following the hearing, on September 25, 2024, the Bankruptcy Court entered the Subpoena Order denying Defendants' motion to quash. On October 2, 2024, Defendants filed the Subpoena Appeal.

### F.    The Motion to Dismiss the Stay Appeal and Subpoena Appeal

On January 13, 2025, the Trustee filed the Motion to Dismiss both the Stay Appeal and the Subpoena Appeal. Only the docket of the Subpoena Appeal reflects an opposition filed by Defendants (Civ. No. 24-1098-GBW, D.I. 8) (the "Opposition"). On February 3, 2025, the Trustee filed his reply in further support of the Motion to Dismiss both appeals. (Civ. No. 24-1094-GBW, D.I. 7; Civ. No. 24-1098-GBW, D.I. 9) (the "Reply"). The Motion to Dismiss is fully briefed. The dockets reflect that no party requested oral argument.

On May 21, 2025, the Court issued an order withdrawing these appeals from the mandatory mediation process and indicating that the Court would rule on the Trustee's Motion to Dismiss prior to merits briefing. (Civ. No. 24-1094-GBW, D.I. 8; Civ. No. 24-1098-GBW, D.I. 10).

## II.    JURISDICTION

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). This Court has jurisdiction to hear appeals, with leave of the court, from "interlocutory orders and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3).

Although Defendants do not appear to argue that either the Subpoena Order or the Stay Order are final orders pursuant to 28 U.S.C. § 158(a)(1), Defendants failed to seek leave to take

interlocutory appeal of either order pursuant to 28 U.S.C. § 158(a)(3). This Court has discretion, however, to treat a notice of appeal as a motion for leave to appeal pursuant to Federal Rule of Bankruptcy Procedure 8004(d).

Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. *See id.* "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011). Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989).

## III.    ANALYSIS

### A.    The Court Lacks Jurisdiction Over the Subpoena Appeal

The Subpoena Appeal seeks immediate review of the Subpoena Order denying Defendants' motion to quash the third-party subpoenas regarding individual bank accounts. In support of his Motion to Dismiss the Subpoena Appeal, the Trustee argues that discovery orders generally are not immediately appealable because they are not final orders. *See, e.g., In re Grand Jury,* 705 F.3d 133, 142-43 (3d Cir. 2012). Indeed, Defendants make no arguments that the Subpoena Order is a final order or that leave to appeal the Subpoena Order involves a controlling question of law upon which there is substantial ground for difference of opinion as to its correctness under 28 U.S.C. § 1292.

The Court agrees with the Trustee that, although no such argument was made, the appeal of the Subpoena Order does not fall within the collateral-order exception to the final judgment rule. *Smith v. BIC Corp.*, 869 F.2d 194, 198 (3d Cir. 1989) ("discovery orders are not final orders for appeal purposes and, therefore, cannot be reviewed unless they fall within the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and its progeny.")). For Defendants to satisfy the collateral-order exception to the final judgment rule, they must satisfy each of the following factors:

> First, the order must "conclusively determine the disputed question." *Coopers & Lybrand v. Livesay*, 437 U.S., at 468, 98 S.Ct., at 2458. Second, the order must "resolve an important issue completely separate from the merits of the action." Ibid. Third and finally, the order must be "effectively unreviewable on appeal from a final judgment." Ibid. (footnote omitted).

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988). Importantly, "[i]f the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order exception ..." *Id.* The Trustee argues that the Subpoena Order, which authorized the Trustee to obtain records during discovery from two banks, does not satisfy any of the applicable requirements, as it is capable of being effectively reviewed on appeal from a final judgment:

> If the subpoenaed documents are relied upon for purposes of summary judgment or trial, those documents will become part of the record and can be effectively reviewed as part of any appeal from a final order or judgment. Alternatively, if subpoenaed documents do not become part of the record, then the [Defendants'] objections will have been rendered moot. In either event, no purpose is served by permitting an immediate appeal of the Subpoena Order, which will either merge into a final judgment or be rendered moot.

(Motion to Dismiss at 12-13.) Defendants have not countered this argument. Finally, the Trustee argues that the Subpoena Appeal is now moot, as the banks have already produced documents in response to the Subpoena Order. Defendants have not countered this argument either.

Indeed, while Defendants filed their Opposition to the Motion to Dismiss in the Subpoena Appeal, the Opposition does not dispute the Trustee's bases for dismissing the Subpoena Appeal nor does it raise any independent arguments in support of this Court's jurisdiction to hear the Subpoena Appeal.[2] Therefore, even assuming the Subpoena Appeal has not been rendered moot by the banks' production of documents, the Court agrees that Defendants have failed to show that the Subpoena Order is final with the meaning of 28 U.S.C. § 158(a), that the Subpoena Order meets the collateral-order exception to the final judgment rule, or that leave to immediately appeal the Subpoena Order is warranted under the relevant factors. Accordingly, the Court lacks jurisdiction over the Subpoena Appeal.

**B.    The Court Lacks Jurisdiction Over the Stay Order**

The Stay Appeal seeks immediate review of the Stay Order denying the motion to stay the entire Adversary Proceeding as to all Defendants other than Mott. The Trustee argues that an order denying a motion to stay when a similar suit is pending is not immediately appealable as the order is "inherently tentative" and is "not made with the expectation that it will be the final word on the subject addressed." (Motion to Dismiss at 9 (quoting *Gulfstream*, 485 U.S. at 275.) The Trustee further argues that the Stay Appeal does not meet the requirements for leave to appeal under 28 U.S.C. § 1292(b) because it does not present a pure question of law but merely disagreement over a fact-dependent determination which can be reviewed only for abuse of discretion. *See Gulfstream*, 485 U.S. at 272.

---

[2] Defendants also filed an opening brief on the merits of the Subpoena Appeal (Civ. No. 24-1098-GBW, D.I. 6) (the "Opening Brief"). Even if it were appropriate to consider this brief in connection with Motion to Dismiss, the brief does not address the jurisdictional issue before the Court.

## 1. The Stay Order Is Not a Final, Appealable Order

Defendants' Opposition[3] largely focuses on the merits of the appeal (*see* Opposition at 2-5 & 9-12), rather than the jurisdictional arguments raised in the Motion to Dismiss. With respect to jurisdiction, Defendants argue that the Court has jurisdiction over an appeal of the Stay Order because "for purposes of 28 U.S.C.[] § 158(d),[4] 'finality' is given a flexible interpretation in bankruptcy where necessary to accommodate concerns unique to the nature of bankruptcy proceedings." (Opposition at 6.) According to Defendants, the "bankruptcy court's order is final since there is no reason to believe the bankruptcy court contemplated additional proceedings to reconsider the scope of the stay. (*Id.* (citing *In re Quigley Co.*, 676 F.3d 45, 56 (2d Cir. 2012), *cert. denied*, 570 U.S. 917 (2013).) Defendants' argument is unavailing.

The final judgment rule is the well established principle that a trial court's ruling is appealable "only when the decision 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Gulfstream,* 485 U.S. at 275 (quoting *Catlin v. United States*, 324 U.S. 229, 2331 (1945)). That said, the Third Circuit has "consistently considered finality in a more pragmatic and less technical way in bankruptcy cases than in other situations." *In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985). An order that "dispose[s] of [a] discrete dispute[] within the larger case," is final and appealable. *In re Energy Future Holdings Corp.*, 904 F.3d 298, 308 (3d Cir. 2018) (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)). "Among the factors relevant to this approach are (1) the impact of the matter on the assets of the bankruptcy estate, (2) the preclusive effect of a decision on the merits, and (3) whether the

---

[3] Notwithstanding that Defendants' Opposition to the Motion to Dismiss was filed only in the Subpoena Appeal, the Court will consider Defendants' arguments as they relate to their proposed appeal of the Stay Order.

[4] It is unclear how 28 U.S.C. § 158(d) is relevant to the Motion to Dismiss.

interests of judicial economy will be furthered by an immediate appeal. *Id.* (internal quotations omitted). "The ultimate question, however, is whether the order fully and finally resolved a discrete set of issues, leaving no related issues for later determination." *Id.* at 308-09 (internal quotations omitted).

Here, the Stay Order plainly did not fully and finally resolve a discrete set of issues, or leave no related issues for later determination. Nor is the Stay Order expected to be the final word on the subject. *See Gulfstream*, 85 U.S. at 277-78. Rather, the Stay Order granted a temporary stay (i) of the Adversary Proceeding solely with respect to Mott; and (ii) with respect to all Defendants, a stay of any determination on the merits of the Debtor's intent. Thus, the Stay Order only stayed certain aspects of the Adversary Proceeding below, while the criminal case remains pending and, therefore, contemplates that the stay will be revisited when the criminal case has concluded. Further, nothing in the Stay Order limits the rights of any party to seek to modify the stay, where a proper basis has been shown for such a modification, *i.e.,* "if particular circumstances demonstrated that the party required Mott's testimony in order fairly to defend against the Trustee's action." (Adv. D.I. 292 at 3.) To the contrary, the remaining Defendants' rights to seek further relief are expressly reserved in the Stay Order. (Stay Order ¶ 3.) The Court agrees that, under prevailing case law, a Stay Order is not a final, appealable order. *See e.g., Nicholas v. Wyndham Int'l, Inc.*, 149 F. App'x 79, 80 (3d Cir. 2005) (holding that the court lacked jurisdiction to consider an appeal from an order denying a stay of a civil action while criminal proceedings were pending and observing that "[t]he grant or denial of a stay of a civil lawsuit is generally not appealable as a collateral order … Denial of a stay 'is simply a step in the process of bringing a case to final judgment and can be effectively reviewed on appeal from that judgment.'") (quoting *Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1071–1072 (3d Cir. 1983)).

The cases cited by Defendants, most of which consider whether orders denying ***motions for***

*relief from the automatic stay* are final for purposes of appeal, do not support their argument that the Stay Order is final for purposes of an appeal. First, Defendants cite *In re Apex Oil*, 884 F.2d 343 (8th Cir. 1989), There, certain prepetition claimants asked the bankruptcy court for relief from § 362(a)'s automatic stay provision to allow them to pursue their wrongful death and personal injury claims in state court *Id.* at 344. The bankruptcy court issued an order denying the stay relief motions but modifying the automatic stay to permit each movant to pursue their claims through a claims resolution process overseen by the bankruptcy court. *Id.* at 345. The claimants appealed the order to the district court, which transferred the appeal to the Court of Appeals for reasons not relevant here. After resolving several other issues, the Court of Appeals considered whether the bankruptcy court's order was a final decision appealable to the district court. *Id.* at 347-48. The Court of Appeals applied the "more liberal" test for finality that many courts apply in the bankruptcy context and concluded that the order modifying the automatic stay was final for purposes of appeal because it "acts as a permanent injunction in terminating the parties' right to pursue their claims in state court." *Id.* at 347. *Apex Oil* is not instructive here.

Second, Defendants cite *In re Sun Valley Ranches*, 823 F.2d 1373 (9th Cir. 1987). This case considered a debtor's appeal of an order granting relief from the automatic stay to permit a secured party to proceed with a foreclosure sale. The decision did not consider the finality of the order and, for the same reasons as *Apex Oil*, is not instructive here.

Third, Defendants cite *In re Chateaugay Corp.,* 880 F.2d 1509 (2d Cir. 1989), which did address the finality of an order, but again, in the context of a creditor's motion for relief from the automatic stay.   There, the bankruptcy court denied the creditor's motion for relief from the automatic stay but ordered the debtor to set aside funds as security for the indebtedness and further ordered that the motion for relief from stay would be reexamined in one year's time. *See id.* at 1510-11.   The creditor appealed.   On further appeal from the district court's dismissal, the Court of

16

Appeals determined that the order was sufficiently final to support a direct appeal. *See id.* at 1513. In sum, these decisions stand for the unremarkable holding that an order denying relief from the automatic stay is final and immediately appealable. *See Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 592 (2020). As the Stay Order did not make any rulings relating to the automatic stay, and is a procedural order which does not act as an injunction to other proceedings, these decisions are not instructive.

Finally, Defendants cite *Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558 (3d Cir. 2015). According to Defendants, this case stands for the proposition that there is jurisdiction over an appeal of an order denying a stay "under 28 U.S.C. § 1292(a)(1)," where the order had "both the effect of an injunction and [] serious, perhaps irreparable, consequences." (Opposition at 8). But § 1292 governs interlocutory appeals from a district court to a court of appeals. And in *Revel AC*, the Third Circuit considered the proper factors to be considered in determining whether to grant *a motion for stay pending appeal* of a bankruptcy court order permitting a debtor to sell a casino free and clear of an existing lease. This case is also not instructive.

In sum, none of these decisions lend support to Defendants' argument that a temporary order staying an adversary proceeding as to an indicted defendant pending the conclusion of her criminal proceeding, but declining to extend that stay to non-indicted defendants based on present facts and a balancing of factors, is somehow a final, appealable order.

## 2.    Leave to Appeal the Stay Order Is Not Warranted

Defendants identify the following questions on appeal: whether the Bankruptcy Court erred in (1) staying the Adversary Proceeding only as to Mott, and (2) declining to stay the Adversary Proceeding as to the remaining Defendants. (*See* Civ. No. 24-1094-GBW, D.I. 3.)

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for

counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254-55 (1936). This "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* "Thus, the decision to stay civil proceedings calls for the trial court, in its discretion, to balance the various interests of the parties, the court, and the public." *In re Adelphia Communications*, 2003 WL 22358819, at *2 (E.D. Pa. May 14, 2003) (citing *Landis,* 299 U.S. at 254-56). In deciding whether to stay a civil case pending the resolution of a related criminal case, courts consider many factors, including: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal proceedings, including whether any defendants have been indicted; (3) the plaintiff's interests in expeditious civil proceedings weighed against the prejudice to the plaintiff caused by the delay; (4) the burden on the defendants; (5) the interests of the court; and (6) the public interest. *Id.* at *3.

As Defendants have not sought leave to appeal the Stay Order, their briefs contain no discussion of the relevant § 1292(b) factors. It is clear, however, that leave to appeal the interlocutory Stay Appeal is not warranted here. As noted, an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b). A controlling question of law must be one "that the reviewing court could decide quickly and cleanly without having to study the record." *In re Cross Media Mktg. Corp.*, 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007) (internal citations omitted). The Bankruptcy Court's weighing of the relevant factors under the *Adelphia* balancing test is necessarily a fact-dependent, discretionary determination which does not present a pure question of law.

"The 'controlling question of law' also must be one as to which there is 'substantial ground for difference of opinion.'" *In re Boy Scouts of Am.*, 2021 WL 1174573 at *4 (citing 28 U.S.C. §

1292(b)). This calls for more than mere disagreement with the ruling of the bankruptcy court." *Id.* To satisfy this standard, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd,* 141 F.3d 1154 (3d Cir. 1998). But the Bankruptcy Court's ruling is based on a balancing of the *Adelphia* factors, as the Bankruptcy Court specifically weighed the possible overlap of issues (*see e.g.*, 8/8/24 Tr. at 15-16, 18-19), the status of the criminal proceeding (*see id.* at 20-21, 33), the burden on and possible prejudice to Mott and the remaining Defendants (*see id.* at 27-33, 42-43),. The Bankruptcy Court ultimately determined that the Adversary Proceeding should be stayed as to Mott but continued as to the Defendants, "to the extent it can go forward without implicating [the remaining Defendants'] rights," unless and until "there's a record that shows me that someone's rights are implicated." (9/25/24 Tr. at 30:1-13; *see also* 8/8/24 Tr. at 29-30, 42.) And as set forth in their Opening Brief, if leave to appeal the Stay Order were granted, Defendants would rely on the same six factors set forth in the *Adelphia*. (*See* Opening Brief at ii (noting *Adelphia* "is one of the leading cases within the Third Circuit" and "[t]he factors analyzed in *Adelphia* included the stage of the criminal proceedings, the similarity of the issues, prejudice to the civil plaintiffs, the burden on the criminal/civil defendants, the interests of the court, and the interests of the public."). Defendants do not ague the Bankruptcy Court applied the wrong test, they simply disagree with the outcome. The Stay Appeal does not present any genuine doubt as to the correct legal standard.

In sum, even assuming that Defendants had sought leave to immediately appeal the Stay Order, leave is not warranted.

## IV.    CONCLUSION

As the Court lacks jurisdiction over the Stay Appeal and the Subpoena Appeal, they will be dismissed. The Court will issue an Order consistent with this Memorandum.

May 22, 2025
Wilmington, Delaware

HONORABLE GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE